UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

CHRISTOPHER LEE WARD,

                                    Petitioner,

      vs.

                                      9:21-CV-293
                                      (TJM/ATB)

WARDEN, FCI Ray Brook,

                                    Respondent.

_____

CHRISTOPHER LEE WARD, Petitioner pro se
CARL G. EURENIUS, AUSA, Attorney for Respondent

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

Petitioner Christopher Ward seeks a petition for habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. No. 1) ("Pet.")  Petitioner challenges the sentence imposed in the Western District of Oklahoma as the result of his 2003 conviction for manufacturing methamphetamine, in violation of 18 U.S.C. § 841(b)(1)(C). (Pet. at 2-3; *see also United States v. Ward*, 182 Fed. App'x 779 (10th Cir. 2006), *cert. denied*, 549 U.S. 968 (2006).

After his direct appeal, petitioner filed a motion to vacate his conviction pursuant to 28 U.S.C. § 2255 in the Western District of Oklahoma. *See United States v. Ward*, No. 5:03-CR-92 (W.D. Okl.) (Dkt. No. 227, § 2255 - Motion to Vacate).  On November 6, 2007, the Honorable David L. Russell, United States District Court Judge Western District of Oklahoma denied petitioner's motion to vacate. (Dkt. No. 235, Order Denying Motion to Vacate).

In the instant application, petitioner argues that he was improperly sentenced in excess of the twenty year statutory maximum and his sentencing guidelines range due to "the erroneous application of the then-mandatory career offender enhancement under U.S.S.G. § 4B1.1." (Pet. at 3). Petitioner argues that he is actually innocent of the sentencing enhancements, given subsequent case law, holding that prior state court convictions "that sweep more broadly than [section] 851 and [section 4B1.1] cannot serve as predicates on which a Federal sentence may be enhanced." (*Id*) (citing *United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018); *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008); *McCoy v. United States*, 707 F.3d 184 (2d Cir. 2012)).

Respondent opposes issuance of the petition, arguing that the petition must be brought, if at all, as a motion to vacate in the sentencing court, pursuant to 28 U.S.C. § 2255 or in the Tenth Circuit Court of Appeals as a second or successive petition under section 2255. (Resp.'s Br.) (Dkt. No. 6). Petitioner has filed a traverse in opposition to respondent's arguments. (Dkt. No. 8). For the following reasons, this court agrees with respondent and will recommend denial of the petition.

## I.    Sentencing Challenge

### A.    Legal Standard

In general, a prisoner who seeks to challenge his federal conviction or to challenge the basis for imposing his sentence, must file a motion to vacate his conviction in the sentencing court pursuant to 28 U.S.C. § 2255. *See Boumediene v. Bush*, 553 U.S. 723, 775 (2008) (sentencing court is already familiar with the facts of the case); *Ultsch v. United States*, No. 19-CV-10703 (VB), 2020 WL 7028909, at *3

(S.D.N.Y. Nov. 30, 2020) (citing 28 U.S.C. § 2255(a); *Dhinsa v. Krueger*, 917 F.3d 70, 80-81 (2d Cir. 2019)).  Section 2255 provides relief in cases where the sentence: "'(1) was imposed in violation of the U.S. Constitution or the laws of the United States; or (2) was entered by a court without jurisdiction to impose the sentence; or (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack.'" *Id.* (quoting *Adams v. United States*, 372 F.3d 132, 134-35 (2d Cir. 2004)).

Section 2255 contains a one year statute of limitations which begins to run from the latest of four possible dates:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)-(f)(4).

Title 28 U.S.C. § 2241 also creates a mechanism for a federal prisoner to challenge his detention. *Candela v. United States*, No. 16-CV-291 (RJD), 2021 WL 512458, at *2–3 (E.D.N.Y. Feb. 11, 2021). Generally, section 2241 is the proper means to challenge the *execution* of a sentence.  In a section 2241 application, the petitioner may challenge, inter alia, the administration of his parole, the computation of his

sentence by parole officials, or disciplinary actions taken against him. *Id.* at \*3 (citing *Adams v. United States*, 372 F.3d at 134-35)).

In addition, if petitioner has brought a previous motion to vacate under section 2255, he must apply to the "appropriate court of appeals" for permission to file a second or successive petition. 28 U.S.C. § 2255(h).  The court of appeals will allow a second or successive petition where there is:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

*Id.* § 28 U.S.C. § 2255(h)(1), (h)(2).

An exception to the above general rules exists allowing "[a] federal prisoner [to] challenge the validity of his conviction under § 2241 if he establishes that § 2255 is 'inadequate or ineffective to test the legality of his detention.'" *Franklin v. Hudson*, 579 F. App'x 50, 51 (2d Cir. 2014) (quoting 28 U.S.C. § 2255(e)). This section of 2255 is referred to as the "savings clause." *Ultsch v. United States*, 2020 WL 7028909, at \*3. "The Second Circuit has interpreted the savings clause of Section 2255(e) 'to authorize a § 2241 petition only when § 2255 is unavailable and the petition is filed by an individual who (1) can prove actual innocence on the existing record, and (2) could not have effectively raised [his] claim of innocence at an earlier time, perhaps due to an intervening change in the governing interpretation of the statute of conviction.'" *Id*. (emphasis in original) (quoting *Dhinsa v. Krueger*, 917 F.3d at 81).

If an inmate files a section 2241 petition in an attempt to avoid section 2255's

limits on second or successive petitions, and if the petitioner has already had a prior

section 2255 petition dismissed on the merits, and if the savings clause does not apply,

the district court may treat the section 2241 petition as a second or successive section

2255 petition and refer the petition to the appropriate circuit court for certification.

*Franklin*, 579 F. App'x at 51. Alternatively, if it is clear from the petition that the

inmate "cannot demonstrate that a remedy under [section] 2255 would be inadequate or

ineffective to test the legality of his detention, the district court may dismiss the

[section] 2241 petition for lack of jurisdiction." *Id.* (citing *Adams*, 372 F.3d at 136).

## B.    Analysis

Petitioner was convicted in the Western District of Oklahoma, after a jury trial

for attempting to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1)

and 846. *Ward*, 182 F. App'x at 782. At his sentencing, two guidelines were

considered: (1) USSG 2D1.1(b)(5)(C) which provided for an enhancement if the crime

involved methamphetamine and created a substantial risk of harm to the life of a minor

or an incompetent,[1] and (2) USSG § 4B1.1 which provides for the career offender

enhancement.[2] *Id*. at 797. On his direct appeal, the petitioner challenged the application

---

[1] The court was citing to the 2003 version of the guidelines. The current guideline is numbered differently.

[2] Section 4B1.1(a) reads as follows:
> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

5

of both guidelines. With respect to the career offender designation, petitioner claimed

under *Blakely v. Washington*, 542 U.S. 296 (2004) that the court improperly made

factual findings about his prior convictions, without submitting them to a jury.[3] *Id.* at

798. After the briefing was completed in petitioner's appeal, the Supreme Court

decided *United States v. Booker*, 543 U.S. 220 (2005) which invalidated the mandatory

nature of the guidelines and required them to be used only in an advisory fashion.

The court considered the application of both guidelines under *Booker*, finding

that whether "prior convictions constituted felony crimes of violence or controlled

substance offenses under USSG § 4B1.1 are questions of law unaffected by *Booker*."

182 F. App'x at 799 (citations omitted). However, the court also found that the trial

court did commit a "non-constitutional *Booker* error" based on its mandatory

application of the guidelines" with respect to the application of both guideline sections.

*Id.* at 799-801. With respect to the career offender guideline, the Tenth Circuit

determined that the district court considered the appropriate factors, notwithstanding

the mandatory nature of the guidelines, and then found that the USSG 2D1.1(b)(5)(C)

---

The remaining sections of 4B1.1 indicate the appropriate sentencing enhancements, based on the offense of conviction and other factors. USSG 4B1.1(b)-(c). Section 4B1.2 defines the terms used in section 4B1.1, including what constitutes a "controlled substance offence.

> (b) The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

[3] Petitioner realized that *Blakely* made an exception for prior convictions, but argued that subsequent case law had called that holding into question. 182 F. App'x at 798.

enhancement did not affect the length of petitioner's sentence because petitioner "conceded at sentencing, the career criminal guideline controlled and resulted in an offense level of 34 even in the absence of the USSG § 2D1.1(b)(5)(C) enhancement." *Id.* at 801.  The court declined to remand for resentencing on those bases.[4]

In this case, the parties do not dispute that petitioner is challenging the imposition of his sentence, which is properly brought as a section 2255 motion to vacate in the sentencing court.  Petitioner argues only that the USSG § 4B1.1 classification as a career offender improperly increased his maximum sentence from 20 to 30 years, resulting in a 327 month (27.25 year) sentence.

Although petitioner challenged the career offender classification on direct appeal, his claim was based on a different argument.  On appeal, petitioner claimed that the court made factual findings about his age and his prior convictions without submitting the facts to a jury in violation of *Blakely*.  Petitioner now bases his challenge on subsequent case law, which he claims establishes that the two prior Oklahoma state felony drug offenses, used to classify him as a career offender in federal court should not have been considered "controlled substance offenses" for purposes of the Guideline 4B1.1 enhancement. (Pet. at 1) (citing *United States v. Traywicks*, 827 F. App'x 889 (10th Cir. 2020), *cert. denied*, 141 S. Ct. 2501 (2021); *United States v. Cantu*, 964 F.3d 924 (10th Cir. 2020).  Under normal circumstances, this court would have no jurisdiction to consider plaintiff's challenge because such a challenge would have to be brought as a section 2255 motion to vacate in the sentencing court. *Boumediene v.*

---

[4] The Tenth Circuit did find that the district court erred in imposing restitution and remanded for purposes of eliminating the order of restitution. 189 F. App'x at 801-801.

*Bush*, *supra*.

Because petitioner's application in this court is in essence a section 2255 motion

challenging the length of his sentence, he may only assert his claims under section 2241

if he can establish that the savings clause applies. *See Dhinsa v. Krueger*, 917 F.3d at

81 ("a court adjudicating a § 2241 petition must confirm that the savings clause can be

applied at all before proceeding with a full merits review of the petitioner's claims").

In order for the court to rule in petitioner's favor on this issue, he must establish that

section 2255 is unavailable, and he is "actually innocent" on the existing record, and

that "he could not have effectively raised [his] claim of innocence at an earlier time."

*Id.*

Petitioner filed a first section 2255 application in the Western District of

Oklahoma on September 21, 2007. *See United States v. Ward*, No. 5:03-CR-0092

(W.D. Okl.) (Dkt. Nos. 227, 228).  In his motion, he argued that he should not have

been sentenced as a career offender based on reasons, unrelated to this action. The

district court denied the motion on November 6, 2007. (Dkt. No. 235) (Order Denying

Motion).  On May 21, 2014, petitioner made a motion to "correct judgment" in the

Western District of Oklahoma, again based on an argument unrelated to this case. (Dkt.

No. 237).  The district judge denied petitioner's motion on May 23, 2014. (Dkt. No.

238).

On May 1, 2015, petitioner made a motion to reduce his sentence under 18

U.S.C. § 3582(c)(2)[5] and "Amendment 782," arguing that the guideline range under

---

[5] A sentence reduction was authorized "in the case of a defendant who has been sentenced to a
term of imprisonment based on a sentencing range that has been lowered by the Sentencing

which he was sentenced was later reduced by the Sentencing Commission. (Dkt. No. 239). The Government opposed his motion, arguing that petitioner's sentence was based on his status as a career offender, and he was ineligible for such a reduction. (Dkt. No. 241). The court agreed and denied petitioner's motion without opinion on March 1, 2016. (Dkt. No. 244).

On November 30, 2020, petitioner brought a motion in Oklahoma for "compassionate release" under the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. No. 245). In this motion, petitioner argued that he was entitled to release for health reasons, but also because of post-sentencing changes in the sentencing laws, the identical claims that petitioner makes herein. (*Id.*) Petitioner based his argument upon *Mathis v. United States*, 579 U.S. 500 (2016) which held that because the elements of Iowa's burglary law were broader than those of generic burglary, Mathis's prior convictions under Iowa state law could not give rise to a sentence enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Petitioner argued that in *Cantu*, the Tenth Circuit applied *Mathis* in holding that the Oklahoma drug statute under which the petitioner was convicted was "indivisible" and could not be used as a predicate offense under the ACCA which required a conviction for a "serious drug offense."[6] (Dkt. No. 245 at 4-5).

_____

Commission pursuant to 28 U.S.C. § 994(o)[.]" 18 U.S.C. § 3582(c)(2).

[6] In *Cantu*, the court held that prior drug convictions under Okla. Stat. tit. 63, § 2-401(A)(1) could not support an ACCA enhancement because there were multiple means by which the Oklahoma statute could be violated, and some of those means do not satisfy the ACCA definition of "serious drug offense." 964 F.3d at 924, 926, 928. The statutory definition of serious drug offense under the ACCA includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (*as defined in section 102 of the Controlled*

9

The Government opposed petitioner's compassionate release motion, in part because he failed to exhaust his administrative remedies, and alternatively, on the merits of his arguments, including his sentencing argument. (Dkt. No. 246).  On January 8, 2021, the Honorable David L. Russell, United States District Judge dismissed the petitioner's motion for "lack of jurisdiction," because petitioner failed to appeal the Warden's denial of his request for compassionate relief. (Dkt. No. 247).

It is unlikely that petitioner would be able to pursue a second or successive habeas petition in Oklahoma, and thus, section 2255 would be "unavailable."  As stated above, petitioner filed a first section 2255 motion to vacate in 2007.  The standard for a second or successive petition requires either newly discovered evidence or a new rule of "constitutional law" that was made retroactive to cases on collateral review by the Supreme Court.  Petitioner relies on neither of these bases for his current application. He is not claiming newly discovered evidence (as opposed to a new interpretation of a statute), and he does not assert a new rule of "constitutional law" that was made retroactive by the Supreme Court.  Although petitioner claims that *Mathis* is retroactive, and assuming that *Mathis* was applicable to petitioner's claim, *Mathis* is a case of statutory interpretation, not constitutional law.  Thus, petitioner would likely fail to meet the standard for bringing a second or successive section 2255 motion.

Petitioner would also run afoul of the statute of limitations if he attempted a

---

*Substances Act* (21 U.S.C. § 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added).  Because the Oklahoma statute prohibited the distribution of three drugs that were not federally controlled, even though some of the drugs were federally controlled, Cantu's conviction under the Oklahoma statute was not a "serious drug offense" under the ACCA. *Id.* at 934.

second or successive section 2255 application.  As stated above, the statute of

limitations begins to run on four possible dates.  Clearly, petitioner cannot rely on the

date that his conviction became final because his conviction was final in 2006, when

the Supreme Court denied certiorari in his case.  Another possibility would be "the date

on which the right asserted was initially recognized by the Supreme Court, if that right

has been newly recognized by the Supreme Court *and* made retroactively applicable to

cases on collateral review."  To the extent that *Cantu* would be applicable to

petitioner's case, it is not a Supreme Court decision, and to the extent that petitioner

argues that his claim is based on *Mathis*, that case was decided in 2016,[7] and this

petition was not filed until 2021.

Petitioner cannot use the final basis for accrual of his claim because the Second

Circuit has held that "intervening developments in case law do not create new "facts"

within the meaning of section 2255(f)(4). *McCloud v. United States*, 987 F.3d 261, 264,

265 n.11 (2d Cir. 2021). *See also United States v. Thomson*, No. CR-12-102-F, CIV-21-

314-F, 2021 WL 1794757 (W.D. Okla. May 5, 2021), (dismissing section 2255 as

untimely, inter alia, because *Cantu* was not a "newly discovered fact" for purposes of

2255(f)(4)), *certificate of appealability denied*, No. 21-6060, 2022 WL 245946 (10th

Cir. Jan. 27, 2022).  Thus, it is clear that section 2255 would not be "available" to the

petitioner.  However, the fact that petitioner cannot file a new section 2255 motion does

not end the savings clause inquiry.  Petitioner must also show actual innocence on the

existing record, that he could not have effectively raised his claim of innocence at an

---

[7] To the extent that petitioner bases his argument on the case of *Dechamps v. United States*, that case was decided even earlier than *Mathis*. *Dechamps v. United States*, 570 U.S. 254 (2013).

earlier time,[8] and that the case or cases upon which he relies have been made retroactive to cases on collateral review.[9] *Sanchez v. Fernandez*, No. 9:18-CV-1188 (GLS/ATB), 2019 WL 4579226, at *6 (N.D.N.Y. May 2, 2019), *report-recommendation adopted*, 2019 WL 4573250 (N.D.N.Y. Sept. 20, 2019).

Petitioner cites cases in which courts have allowed section 2241 claims where the petitioner claims innocence of the sentence enhancement in contrast to innocence of the underlying crime. (Pet.'s Trav. at 2-8) (citing inter alia *Brown v. Caraway*, 719 F.3d 583 (7th Cir. 2013); *Hill v. Masters*, 836 F.3d 591 (6th Cir. 2016); *Lester v. Flournoy*, 909 F.3d 708 (4th Cir. 2018); *Allen v. Ives*, 950 F.3d 1184 (9th Cir. 2020)). The cases cited by petitioner still require that the case upon which the petitioner relies have been made retroactive to cases on collateral review. *Brown*, 719 F3d at 586; *Hill*, 836 F.3d at 594-95; *Lester*, 909 F.3d at 712; *Allen*, 950 F.3d at 1190.

There is also case law in the petitioner's sentencing jurisdiction, disagreeing with petitioner's argument that he may be innocent of the enhanced sentence. *See e.g. Thompson, supra*, 2021 WL 1794757, at *2. In *Thompson,* in the context of 2255 and the statute of limitations, the district court held that the petitioner could not assert "actual innocence" based on his alleged innocence of a non-capital sentence. 2021 WL

---

[8] *Dhinsa v. Krueger*, 917 F.3d at 81.

[9] There is a difference between the Supreme Court holding that a constitutional case is retroactive to cases on collateral review, which would allow the petitioner to bring a second or successive section 2255 motion, and a lower court finding that a non-constitutional or statutory case is retroactive to cases on collateral review, which would not apply for purposes of a second or successive petition, but would apply in arguing that the section 2255 motion was inadequate or ineffective so that the petitioner could utilize the savings clause and bring a section 2241 petition. *Sanchez*, 2019 WL 4579226, at *6 n.9.

1794757, at *2 (citing inter alia *United States v. Denny*, 694 F.3d 1185, 1191 (10th Cir. 2021) ("defendant 'cannot be actually innocent of a noncapital sentence"). In denying the certificate of appealability in *Thompson*, the Tenth Circuit specifically cited *Denny*, together with *United States v. Pettiford*, 612 F.3d 270, 284 (4th Cir. 2010) (holding that a claim challenging classification of a conviction as an ACCA predicate was not cognizable as a claim of actual innocence). 2022 WL 245946, at *2. The Tenth Circuit stated that Thompson had "not shown that the district court's rejection of his equitable tolling and actual innocence arguments was debatable." *Id.*

In a further attempt to show that he is actually innocent, petitioner cites *United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018). In *Townsend*, the court held that under the Sentencing Guidelines, a "controlled substance offense" must be defined by federal and not state standards. *Id.* at 70-71. The court was considering U.S.S.G. § 2K2.1 (a)(2), which provided for a Guidelines base offense level of 20 if the defendant was convicted of being a felon in possession of a firearm, under 18 U.S.C. § 922(g)(1), after sustaining one felony conviction for either a crime of violence or a controlled substance offense. *Id.* (citing U.S.S.G. § 2K2.1(a)(4)(A) (2016)). The base offense level increased from 20 to 24 if the defendant had two such prior convictions. *Id.* (citing U.S.S.G. § 2K2.1(a)(2)). Townsend's base offense level was increased using a prior controlled substance conviction under New York law which was substantively broader than its federal counterpart,[10] meaning that the substance was criminalized under New York law, but not under the federal Controlled Substances Act. *Id.*

---

[10] His base offense level was also increased using a prior New Jersey conviction, but Townsend ultimately did not challenge the use of that conviction.

The Second Circuit noted that section 2K2.1 adopted the definition of a controlled substance in section 4B1.2(b), and ultimately held that the definition of "controlled substance" in section 4B1.2(b) of the Guidelines includes only substances controlled under the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 et seq., and that "a state statute that punishes conduct not criminalized by federal law cannot affect the Guidelines calculation." *Id.* at 73.  Thus, the court held that "[t]he term "controlled substance" in U.S.S.G. § 4B1.2(b) refers exclusively to those substances in the CSA." *Id.* at 75.  The case was remanded for resentencing. *Id.*

While arguably applicable to petitioner's case in terms of an actual innocence claim,[11] *Townsend* came to the Second Circuit on direct appeal from the defendant's criminal sentence, not on collateral review.  Courts interpreting *Townsend* have held that it is not retroactive to cases on collateral review because it merely resolved a split in district court authority interpreting the statute. *See United States v. Lopez*, 523 F. Supp. 3d 432, 439-40 (S.D.N.Y. 2021).

The most recent discussion of petitioner's specific claim appears in the denial of certiorari in *Guerrant v. United States*, 849 F. App'x 410 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 640 (2022).  In the denial of certiorari, Justice Sotomayer, joined by Justice Barrett, stated that defendants who have two prior felony convictions for a "controlled substance offense" qualify as "career offenders" under the Federal Sentencing Guidelines. 142 S. Ct. at 640 (citing USSG § 4B1.1(a) (Nov. 2021)).  "As a result, they generally face dramatically higher sentencing ranges for their crime of conviction." *Id.*

---

[11] This court makes no such findings on the merits.

The court then stated that "[t]his petition implicates a split among the Courts of Appeals over the proper definition of a 'controlled substance . . . ." *Id.*

Section 4B1.2(b) defines a "controlled substance offense" as "'an offense under federal *or* state law . . . that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of such substances with intent to engage in such activities.  The Guidelines do not define 'controlled substance.'" *Id.*  The court recognized that the Second and Ninth Circuits turn to federal law to define the term, and in those circuits, a defendant has committed a "controlled substance" offense if the offense involved a substance listed in the CSA. *Id.* (citing *United States v. Bautista*, 989 F.3d 698, 702-704 (9th Cir. 2021); *Townsend*, 897 F.3d at 68).  The First and Fifth Circuits have not specifically decided the issue, but "have indicated agreement with this approach." *Id.* (citing *United States v. Crocco*, 15 F.4th 20, 23-25 (1st Cir. 2021); *United States v. Gomez-Alvarez*, 781 F.3d 787, 792-94 (5th Cir. 2015).

However, the Fourth, Seventh, Eighth, and Tenth Circuits define "controlled substance" based on the relevant state law. *Id.* (citing *United States v. Jones*, 15 F.4th 1288, 1291-96 (10th Cir. 2021); *United States v. Henderson*, 11 F.4th 713, 718-19 (8th Cir. 2021); *United States v. Ward*, 792 F.3d 364, 371-74 (4th Cir. 2020); *United States v. Ruth*, 966 F.3d 642, 651-54 (7th Cir. 2020)).  Justice Sotomayer noted that the Sixth and Eleventh Circuits issued "internally inconsistent" decisions on the question. *Id.* (citations omitted). Certiorari was denied in *Guerrant* because "[i]t is the responsiblity of the Sentencing Commission to address this division to ensure fair and uniform

application of the Guidelines, but that the Commission lacked a quorum of voting members. *Id.* at 641.

While recognizing that such a split in the circuits can have a direct and severe impact on a defendant's sentencing, the court declined to grant certiorari to address the issue, based on the finding that such a conflict should be resolved by the Sentencing Commission.  The Court had the opportunity to resolve the circuit split and to make the case "retroactive," but it did neither.  *Guerrant* illustrates that this inconsistency in Guideline interpretation does not indicate that petitioner is actually innocent of the sentence enhancement, or that the cases he cites apply retroactively in his case.  Thus, he cannot fulfill the requirements of the savings clause.

The court notes that in *United States v. Jones*, the Tenth Circuit case cited by Justice Sotomayer, the court distinguished *Cantu* in its holding. 15 F.4th at 1290-91. *Jones* was also a direct appeal from the defendant's sentence, and the Tenth Circuit decided *Cantu*, while *Jones* was pending.  The district court in *Jones* discussed the application of *Cantu* to Mr. Jones's case at his sentencing. *Id.*  In its decision, the Tenth Circuit distinguished the Second, Fifth, and Ninth Circuits' interpretation of the Guideline, and held that the reference to federal or "state law" in the Career Offender Guideline meant just that. *Id.* at 1291-92 (citing U.S.S.G. § 4B1.2(b)).  This reference is distinguishable from the ACCA guideline in *Cantu*, which specifically refers to "[t]he statutory definition of serious drug offense, including "'an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (*as defined in section 102 of the Controlled*

***Substances Act (21 U.S.C. § 802)***, for which a maximum term of imprisonment of ten

years or more is prescribed by law.'" 964 F.3d at 926 (citing 18 U.S.C. § 924(e)(2)(A)

(ii)).  The ACCA definition specifically referred to state law, but added that the

substance must be "as defined" in the CSA.  The court in *Cantu* undertook an analysis

under *Mathis* and *Mellouli v. Lynch*, 575 U.S. 798 (2015) and determined that Cantu's

predicate state law offenses did not qualify under the ACCA as serious drug crimes

because one could be found guilty of the state crime without being guilty of a federal

crime under the CSA, even if the actual drug for which the defendant was found guilty

was included in the CSA.[12]

While this court understands that the Second Circuit does not agree with the

Tenth Circuit's decision in *Jones*, this does not help the petitioner overcome the

requirements of the savings clause because petitioner has not shown that any case

establishing his innocence has been made retroactive to his case.  To the extent that

petitioner argues that the sentencing court committed a *Booker* violation because of the

"mandatory nature" of the guidelines at the time of his sentencing, I note as I stated

above, that in his direct appeal, the Tenth Circuit thoroughly discussed *Booker*,

determined that a non-constitutional *Booker* error was made, but analyzed petitioner's

case accordingly and declined to change the sentence. 182 F. App'x 799-801. This

court must recommend dismissal of the section 2241 petition for lack of jurisdiction.

---

[12] Without getting deeply into the courts' analysis of the statutes, I note that in *Cantu*, following *Mathis*, the court examined the state statute under which the defendant was convicted and determined that the Oklahoma statute was not "divisible" by individual drug, and thus, '[b]ecause that statute prohibits the distribution of three drugs that were not federally controlled, Defendant's conviction under [§ 2–401(A)(1)] was not a "serious drug offense" *under the ACCA*." The enhancement of Defendant's sentence under the ACCA was therefore error." 964 F.3d at 934 (emphasis added).

The court must make a final observation.  As stated above, petitioner brought his sentencing claim in the Oklahoma district court in his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).[13]  He made the almost the same argument, based on the same cases.  While the court in Oklahoma denied the petitioner's motion, it did not do so on the merits.  The court dismissed the petitioner's motion because he neglected to appeal the warden's denial of his administrative request.  Courts have allowed inmates to challenge the length of their sentences under the First Step Act. *See United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020) (discussing the history of the First Step Act and its application to sentence reductions); *United States v. Shkambi*, 993 F.3d 388, 390-92 (5th Cir. 2022) (discussing *Brooker* and other cases holding that inmate can bring a motion for compassionate release under the First Step Act and that the court has jurisdiction to consider the reasons that the inmate submits weigh in favor of release).

The Tenth Circuit has stated that:

> We also know that Congress intended for § 3582(c)(1)(A) "to provide a 'safety valve' that allows for sentence reductions" to any defendant "when there is *not* a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction."

*United States v. McGee*, 992 F.3d 1035, 1046 (10th Cir. 2021) (quoting *United States v.*

---

[13] 18 U.S.C. § 3582(c)(1)(A) permits a court to modify a term of imprisonment that has been imposed where, after considering the factors set forth in 18 U.S.C. § 3553(a), it finds that (i) "extraordinary and compelling reasons warrant such a reduction," or (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community. 18 U.S.C. § 3582(c)(1)(A).  The court must also find that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*.

*McCoy*, 981 F.3d 271, 287 (4th Cir. 2020)) (emphasis in original).  The court in *McGee*

also stated that jurisdiction under section 3582(c)(1)(A) was not enough.  The district

court was required to find "extraordinary and compelling reasons" for a sentence

reduction. *Id.* at 1048.  The court must also consider the factors in 18 U.S.C. § 3553(a).

The court has jurisdiction to consider a motion for compassionate release after the

inmate's first motion was denied for failure to exhaust. *See e.g. United States v.*

*DiMartino*, No. 21-81-CR, 2022 WL 761511, at *1-2 (2d Cir. Mar. 14, 2022) (noting

that DiMartino's first motion was denied for failure to exhaust, and he filed a second

motion after properly exhausting his remedies - the inmate ultimately filed four motions

for compassionate release, and the court denied them on the merits).

Although this court makes no finding on the merits of such an application, I note

that petitioner might have the opportunity, after properly exhausting his administrative

remedies with the Bureau of Prisons, to bring another motion pursuant to section

3582(c)(1)(A) in the sentencing court,[14] which can make a proper determination of

whether the petitioner would be entitled to early release.

**WHEREFORE**, based on the findings above, it is

---

[14] Although petitioner would initially exhaust his administrative remedies in the jurisdiction of his current incarceration, it appears that the motion to reduce his sentence would be appropriate in the district of sentencing, where the judge would be most familiar with the reasons for the sentence imposed. *See United States v. Gonzalez*, No. 03 CR 1310 (LAP), 2022 WL 874996, at *2 (S.D.N.Y. Mar. 24, 2022) (movant incarcerated at FCI Ft. Dix, and exhausted his administrative remedies with the BOP there, but motion for compassionate release was made in SDNY, the sentencing district). Petitioner is well aware of the procedure because he was incarcerated at Ray Brook when he made his first motion for compassionate release in the Western District of Oklahoma. *See United States v. Ward*, No. CR-03-92-R (W.D. Okla. Jan. 8, 2021) (Dkt. No. 247 at 1-4). In this decision, the district court specifically informed petitioner of the steps required to exhaust his administrative remedies. *Id.* at 3-4.

**RECOMMENDED**, that the petition be dismissed for lack of jurisdiction.[15]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: April 14, 2022

Andrew T. Baxter
U.S. Magistrate Judge

---

[15] The court makes no reference to a certificate of appealability because a federal prisoner seeking habeas relief under Section 2241 need not obtain a certificate of appealability to take an appeal. *See Murphy v. United States*, 199 F.3d 599, 601 n.2 (2d Cir. 1999).  However, if after reviewing this report and recommendation, the court finds that an appeal would not be taken in good faith, the court may so indicate for purposes of in forma pauperis status on appeal. *See Ultsch*, 2020 WL 7028909, at *5.